Filed 12/12/14  P. v. Desbrow CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANNE JOHN DESBROW,<br><br>    Defendant and Appellant. | D064649<br><br><br>(Super. Ct. No. SCE314130) |


APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.


Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Danne John Desbrow guilty of first degree murder (Pen. Code, § 187, subd. (a))[1] and made true findings on firearm enhancements (§§ 12022.53, subds. (b), (c), (d), 12022.5, subd. (a)). The trial court sentenced Desbrow to an indeterminate prison term of 50 years to life.

Desbrow contends that (1) his conviction should be reduced to second degree murder because substantial evidence does not support the jury's finding of premeditation and deliberation necessary for first degree murder; (2) the trial court erred in denying his motion for acquittal under section 1118.1 because the evidence at the close of the prosecution's case did not support a finding of premeditation and deliberation; and (3) defense counsel was ineffective because he did not request that the jury be instructed with CALCRIM No. 522, which states that provocation may reduce first degree murder to second degree murder. We conclude that Desbrow's arguments lack merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

At around 1:30 p.m. on December 31, 2003, Desbrow shot Kevin Santos in the back of the head on the exterior stairway of an apartment complex. Santos died of his injuries on February 8, 2004.

Desbrow testified at trial and admitted to shooting Santos, but he claimed it was an accident. According to Desbrow, he was at the apartment complex to sell

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

methamphetamine, when he heard an argument in the upstairs apartment where some friends of his lived and where he had been selling drugs a few minutes earlier. The argument was loud, and Desbrow did not want to draw the police to the apartment complex with neighbors' complaints, so he went upstairs to calm down the situation. Desbrow learned that Santos, who was visiting the apartment and who had just bought methamphetamine from Desbrow, had been fighting with one of the residents of the apartment, Langston Stevens.

According to Desbrow, to diffuse the situation he took out his gun and "racked a round." He then pointed the gun at Santos and told him to leave the apartment. As Desbrow testified, he was leading Santos down the exterior stairway, with the gun pointed at Santos's back, when Desbrow lost his balance on the stairs and accidentally discharged his gun into Santos's head. Santos slid to the bottom of the stairway, with a penetrating gunshot wound to the right side of his head, where it met his neck. Immediately after the shooting, Desbrow fled the scene and disposed of his firearm.

When authorities responded to the scene after the shooting, they observed that Santos was wearing metal knuckles on his left hand and possessed drug paraphernalia.

The shooting occurred in 2003, but Desbrow was not indicted for Santos's murder until 2011. In the interim, although some witnesses suggested that Desbrow was the shooter, no one claimed to have seen the shooting and Desbrow consistently told authorities that he was not involved. A central witness, Deana Guzman, who was in an intimate relationship with Desbrow at the time of the shooting, was interviewed by police several times over the years. Guzman resided in the apartment where the shooting took

3

place, and until September 2010, she had claimed that she did not see the shooting because she was either in her bedroom at the time or not there at all. However, in September 2010, and later at trial, Guzman stated that she had witnessed the shooting and that she saw Desbrow intentionally shoot Santos.

At trial, Guzman described the shooting and the events leading up to it. As Guzman explained, at the time of the shooting, she was a very close friend of Santos, although not romantically involved with him, and she was in an intimate relationship with Desbrow and sold methamphetamine with him. Desbrow and Stevens had spent time together on the night before the shooting, selling drugs together and breaking into cars. Guzman testified that Stevens returned to the apartment in the morning and argued with his wife about his suspicion that she was seeing Santos.

Later that day, shortly before the shooting, Stevens and Santos had a fistfight, which was broken up by Guzman and the other women in the apartment. After the fight, as Santos was leaving the apartment, Desbrow, Guzman and Santos were all outside of the apartment door on the landing above the stairs. Guzman testified that she saw Desbrow holding a gun to the back of Santos's head. She said "No, no. Don't shoot him" or "No, don't do it. It's not worth it." Desbrow proceeded to shoot Santos in the back of the head despite Guzman's pleas. According to Guzman, the shooting was not an accident.

The evidence at trial suggested several possible motives for the shooting. First, as one possible motive, witnesses stated that Santos had given Desbrow counterfeit money during a drug deal. In connection with this theory, Desbrow admitted during his

4

testimony that Santos had tried to pay him with a counterfeit bill, but Desbrow claimed that he was not mad about that incident. Second, a witness stated that Desbrow did not like Santos because Santos had a close relationship with Guzman. Third, a witness testified to overhearing a conversation between Desbrow and Guzman a few days before the shooting about Santos being a snitch. Accordingly, Desbrow, who had some gang affiliation, would have had a motive to retaliate against Santos for being a snitch. Fourth, a witness told police that Desbrow claimed to have shot Santos because Santos fought back while Desbrow was trying to rob him. Finally, Guzman stated during her trial testimony that she thinks Desbrow shot Santos in support of Stevens, as Stevens and Santos had just been involved in a fight.

During closing argument, defense counsel took the position that, as Desbrow testified, the shooting was an accident, and thus "at best, this was an involuntary manslaughter."

Apparently rejecting Desbrow's testimony that the shooting was an accident, the jury found Desbrow guilty of first degree murder (§ 187, subd. (a)). The jury also found that Desbrow personally used and intentionally discharged a firearm (§§ 12022.53, subds. (b), (c), 12022.5, subd. (a)), causing great bodily injury or death (§ 12022.53, subd. (d)). Desbrow was sentenced to prison for a term of 50 years to life.

## II.

## DISCUSSION

A.      *Substantial Evidence Supports the First Degree Murder Conviction*

We first consider Desbrow's argument that insufficient evidence supports a finding that he committed the shooting with the premeditation and deliberation necessary for a first degree murder conviction. (§ 189.)

In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. . . . If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. . . . 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 60, citations omitted.)

As the jury was instructed, a conviction for first degree murder in this case required a finding that Desbrow intentionally killed Santos with deliberation and premeditation. (§ 189.) In the context of first degree murder, " '[d]eliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as

6

much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' "  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  " ' "Premeditation and deliberation can occur in a brief interval.  'The test is not time, but reflection.' " ' "  (*People v. Solomon* (2010) 49 Cal.4th 792, 812 (*Solomon*).)  Our Supreme Court has identified " ' "three categories of evidence relevant to resolving the issue of premeditation and deliberation:  planning activity, motive, and manner of killing." ' "  (*People v. Lee* (2011) 51 Cal.4th 620, 636.)  However, "[t]hese three categories are merely a framework for appellate review; they need not be present in some special combination or afforded special weight, nor are they exhaustive." (*People v. Booker* (2011) 51 Cal.4th 141, 173.)

Here, the strongest evidence of premeditation and deliberation is contained in Guzman's testimony about the manner in which the shooting took place.[2]  As Guzman testified, when she saw Desbrow place a gun to the back of Santos's head, she pleaded with Desbrow not to shoot by saying either "No, no.  Don't shoot him" or "No, don't do it. It's not worth it."  Desbrow rejected Guzman's pleas by proceeding to shoot Santos in the back of the head.  Desbrow's decision to shoot Santos in the head despite pleas that he not do so is evidence that he had an opportunity to think over and weigh his course of action before acting.  (*People v. Saterfield* (1967) 65 Cal.2d 752, 759 [evidence was sufficient to

---

[2]     Desbrow argues that Guzman's account of the shooting was not believable both because of its content and because Guzman told several different stories to authorities over the years.  The argument is misplaced because it is the role of jury, not of the appellate court, to assess the credibility of witnesses.  (*People v. Lewis* (2001) 26 Cal.4th 334, 361.)

support a finding of premeditation and deliberation where the defendant shot the victim in the head at close range after rejecting pleas not to do so]; *People v. Bolin* (1998) 18 Cal.4th 297, 320 [evidence of victim's pleas for his life were particularly relevant to the issue of the defendant's premeditation].)  Desbrow relies on *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1268, which concluded that the defendant's act of shooting the victim in the head, standing alone, was not sufficient to support a finding of premeditation and deliberation.  Here, however, Guzman's description of her pleas to Desbrow that he not shoot Santos is *additional* evidence, beyond the physical nature of the gunshot to Santos's head, to support a finding that, based on the manner of the shooting, Desbrow acted with premeditation and deliberation, rather than on "unconsidered or rash impulse."  (*Solomon*, *supra*, 49 Cal.4th at p. 813.)[3]

---

3     In denying the motion for a judgment of acquittal the trial court stated that the evidence supported a finding that the shooting was "execution-style."  The trial court's reference was apparently meant to invoke case law holding that when the defendant commits an execution-style shooting, a reasonable trier of fact may find premeditation and deliberation based solely on the manner of the killing.  (*People v. Romero* (2008) 44 Cal.4th 386, 401 [the victim "was killed by a single gunshot fired from a gun placed against his head" and this execution-style manner of killing supports a finding of premeditation and deliberation when, as here, there is no indication of a struggle"]; *People v. Bloyd* (1987) 43 Cal.3d 333, 348 (*Bloyd*) [cold and calculated execution-style killings by shots to the head was "very strong evidence of premeditation and deliberation"].)  Desbrow devotes a significant portion of his appellate brief to arguing that the shooting here was not execution-style.  We need not resolve that dispute.  The important point is not whether a shooting is technically "execution-style."  Instead, the relevant question is whether the manner of the killing so strongly supports a finding of premeditation and deliberation that it is not necessary that the record also contain evidence of the defendant's motive and planning to provide sufficient evidence to support the jury's verdict.  Here, because Guzman was a witness to the shooting and described it as a deliberate shot to Santos's head after she pleaded with Desbrow to stop, the evidence of the manner of the killing is strong enough on its own to support a finding of

Additional support for a finding of premeditation and deliberation is provided by the evidence of Desbrow's possible motives for the shooting, suggesting that he arrived at a plan to kill Santos, and did so despite Guzman's pleas, in retaliation for any of several disrespectful acts by Santos. Specifically, the jury could conclude that Desbrow shot Santos in retaliation for Santos's close relationship with Guzman, Santos's attempt to pay Desbrow with counterfeit money, Santos's possible status as a snitch, or Santos having engaged in a fight with Stevens. Based on any of those retaliatory motives for Desbrow's actions, a juror could reasonably conclude that Desbrow had a preconceived plan to shoot Santos based on preexisting animus toward Santos rather than on a rash and unconsidered impulse. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295 [the fact that a murder was committed for retaliation supporting a finding that it was committed with premeditation and deliberation].)[4]

In sum, based on the evidence of the manner of the shooting, including Guzman's plea for Desbrow to stop, and Desbrow's possible motives for the killing, a reasonable juror could find that Desbrow committed the murder with premeditation and deliberation.

premeditation and deliberation, regardless of whether it was technically "execution-style." (See *People v. Hawkins* (1995) 10 Cal.4th 920, 957 [evidence of motive "is not indispensable to proving premeditation when the manner-of-killing evidence is so compelling"].)

[4] Desbrow contends that the evidence of any particular motive for the shooting was weak or speculative, and thus could not contribute to a finding of premeditation or deliberation. We disagree. Although no witness could identify with certainty Desbrow's thought process in deciding to shoot Santos, the record contains sufficient evidence for the jury to have reasonably inferred that Desbrow had one of any number of motives to shoot Santos.

B.      *The Trial Court Properly Denied the Motion for a Judgment of Acquittal*

At the close of the People's evidence, Desbrow moved for a judgment of acquittal pursuant to section 1118.1, arguing that the evidence was insufficient to support a finding that Desbrow acted with the premeditation and deliberation necessary for first degree murder.  Desbrow contends that the trial court erred in denying the motion.  As we will explain, we disagree.

In a case tried by a jury, at the close of the People's evidence the defendant may move for a judgment of acquittal on any charged offense "if the evidence then before the court is insufficient to sustain a conviction of such offense . . . on appeal."  (§ 1118.1.) "An appellate court reviews the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction[,]" but focuses only on the evidence as it stood at the point that the motion was made.  (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

Here, as we have explained, substantial evidence supports a finding that Desbrow acted with premeditation and deliberation.  All of the evidence supporting that conclusion was introduced during the People's case.  Accordingly, based on the same evidence supporting our conclusion that substantial evidence supports the verdict, we also reject Desbrow's argument that the trial court erred in not granting the motion for a judgment of acquittal.  (*Bloyd*, *supra*, 43 Cal.3d at p. 350 [in an appeal arguing insufficient evidence of premeditation and deliberation, the court rejected an argument that the trial court erred in denying a motion for judgment of acquittal "[i]nasmuch as we have determined above that the evidence is sufficient to sustain the judgment" and "the same evidence which,

10

minus the evidence presented by the defense, is even stronger" supports the trial court's ruling denying the § 1118.1 motion].)

C.      *Desbrow Has Not Established That Defense Counsel Was Ineffective for Failing to Request That the Jury Be Instructed with CALCRIM No. 522*

Desbrow contends that defense counsel was ineffective because he did not request that the jury be instructed with CALCRIM No. 522, which states that "[p]rovocation may reduce a murder from first degree to second degree  . . . ."[5]

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel."  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  A defendant claiming ineffective assistance of counsel has the burden to show:  (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *Ledesma*, at pp. 216, 218.)  Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

---

5      As Desbrow acknowledges, the trial court has no sua sponte duty to give CALCRIM No. 522 without a request from one of the parties.  (*People v. Rogers* (2006) 39 Cal.4th 826, 880 [discussing predecessor instruction CALJIC No. 8.73]), and he accordingly argues that defense counsel was ineffective for not requesting the instruction.
        Specifically, regarding the reduction from first degree to second degree murder, CALCRIM No. 522 provides in relevant part:  "Provocation may reduce a murder from first degree to second degree . . . .  The weight and significance of the provocation, if any, are for you to decide.  [¶]  If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder."

11

reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

Further, as is important here, "[r]eviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

CALCRIM No. 522 is based on the concept that " ' "existence of provocation which is not 'adequate' to reduce the class of the offense [from murder to manslaughter] may nevertheless raise a reasonable doubt that the defendant formed the intent to kill upon, and carried it out after, deliberation and premeditation" ' — an inquiry relevant to determining whether the offense is premeditated murder in the first degree, or unpremeditated murder in the second degree." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) Desbrow argues that defense counsel was ineffective for not requesting that the jury be instructed with CALCRIM No. 522 because "a reasonable juror could have concluded [Desbrow's] emotions were aroused by Santos'[s] presence at the apartment and conduct as he was being escorted outside" and, based on the instruction, could have concluded that Desbrow "shot Santos due to provocation and not as the result of premeditation and deliberation." Specifically, Desbrow points to evidence that a fight

12

had just taken place between Santos and Stevens, and according to Desbrow's account, Santos did not willingly leave the apartment, was talking back to Desbrow and seemed to be contemplating hitting him.

Desbrow fails to establish that he received ineffective assistance, as defense counsel could have had a sound tactical basis for the decision to omit CALCRIM No. 522 from the requested instructions. It is reasonable for defense counsel to decline to request an instruction that is inconsistent with the defense's theory of the case. (*People v. Wader* (1993) 5 Cal.4th 610, 643 [defense counsel could have had a rational tactical purpose for not requesting an instruction that was inconsistent with the defense's theory of the case that the defendant did not intend to kill the victim].) Here, it is clear from Desbrow's testimony and defense counsel's closing argument that the defense theory was that the shooting was an accident done while Desbrow was recklessly brandishing a firearm. On that theory, defense counsel advocated during closing argument that the jury return a verdict of involuntary manslaughter, not murder. An instruction on provocation as a basis for second degree murder as set forth in CALCRIM No. 522 would have been contrary to the defense's theory of the case that the shooting was unintentional and amounted to no more than involuntary manslaughter. Defense counsel therefore could have made a reasonable tactical decision to omit CALCRIM No. 522 to keep the focus on the theory of involuntary manslaughter rather than on second degree murder.

13

As we will reverse on the ground of ineffective assistance of counsel " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission' " (*People v. Zapien* (1993) 4 Cal.4th 929, 980), and defense counsel may have made a reasonable tactical decision to omit CALCRIM No. 522, we conclude that Desbrow has failed to establish a ground for reversal.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P.J.


AARON, J.